HONORABLE BENJAMIN H. SETTLE

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| INDEMNITY INSURANCE COMPANY OF NORTH AMERICA, LYNDEN TRANSPORT, INC., <br><br> Plaintiffs, <br><br> vs. <br><br> TOTEM OCEAN TRAILER EXPRESS, INC.; M.V. NORTH STAR, her engines, tackle and appurtenances, *in rem* <br><br> Defendants. | IN ADMIRALTY <br><br> NO. 3:13-cv-06093-BHS <br><br> PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT <br><br> NOTED:  January 16, 2015 |

**I. SUMMARY**

Plaintiff Lynden Transport, Inc. ("Lynden") engaged Defendant Totem Ocean Trailer Express, Inc. ("TOTE") to transport cargo aboard its vessel, the M/V NORTH STAR, from Tacoma, Washington to Anchorage, Alaska. Lynden delivered the cargo to TOTE in good condition, but the cargo was damaged during the voyage to Alaska, and discharged in a damaged condition. These facts make TOTE liable for the damage under the Carriage of Goods by Sea Act ("COGSA"), which the parties agree governs liability in this case. Although

PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 1

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES LLP**
999  THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700   FAX, (206) 623-8717

COGSA allows TOTE the opportunity to rebut this prima facie case by proving that Lynden's actions somehow caused the loss, it has failed to do so. While TOTE argues that Lynden used faulty chains to secure the cargo before transport, it has adduced no positive evidence either that Lynden's chains or method of securement were inadequate, or that the alleged inadequacy caused the damage to the cargo. It relies instead on pure speculation that, because Lynden's chains broke, they were both defective and the cause of the loss. Even if this were sufficient to rebut Lynden's prima facie case, Lynden here presents expert opinion testimony that Lynden's securement of the cargo was adequate, and that it was TOTE who failed to properly secure the cargo to the vessel's deck, and that this failure was at least a contributing cause of the loss. COGSA would then require TOTE to prove the amount of damage attributable to each cause of the loss, or, if it cannot do so, to bear liability for the entire loss itself. Given TOTE's complete failure of proof on these issues and Lynden's compelling evidence that TOTE is to blame for the loss, Defendants' Motion for Summary Judgment should be denied.

## II.  FACTUAL BACKGROUND

A.  **Lynden's Lashings Securing the Generators to the Trailers Were Plainly Visible to TOTE.**

When Lynden delivered the subject NC Power generators to TOTE on December 27, 2012, their lashings were plainly visible.[1] The generators were affixed to platforms, which had eyes along their sides and corner securement points through which the lashing chains were passed and secured to trailers nos. LTIA 647102 ("Trailer 102") and LTIA 647103 ("Trailer 103").[2] Although the generators were covered in shrink-wrap, contrary to TOTE's assertion, the lashings, eyes, and securement points were not.[3] They were all plainly visible for inspection and, in fact, were inspected by TOTE upon receipt, as per TOTE's tariff:

---

[1] Declaration of Patty Ludden ("Ludden Decl."), Ex. D, pp. 1 and 5, "TOTE TACOMA FULLIN" Receipts, EIR 481 and EIR 419; Declaration of Phillip Jensen, Truck Driver for AWE ("Jensen Decl."), ¶3; Declaration of Jerome Orth, Truck Driver for AWE ("Orth Decl."),¶3.
[2] Jensen Decl., ¶3; Orth Decl., ¶3.
[3] *Id.*

PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 2

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES LLP**
999  THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700   FAX, (206) 623-8717

> Unless other arrangements have been approved by the carrier in advance, flatbed loads shall be inspected at the point of tender to determine whether cargo has been properly secured to flatbed. Flatbed loads tendered at carrier's terminal shall be inspected at carrier's terminal.[4]

TOTE's inspector raised no objections to the lashings' condition or the method of securement, and accepted the cargo for shipment.[5] The generators were in good condition when they were delivered to TOTE, as illustrated in the photos taken by TOTE upon receipt.[6]

**B.    TOTE's Stowage of the Generators.**

Later that day, TOTE loaded the generators and the trailers on the vessel's forward main deck.  Trailer 102 was loaded at stowage location 1047 and Trailer 103 was loaded at stowage location 1045.[7]  TOTE's longshoremen chose the stowage locations and secured the trailers to the vessel's deck using chain lashings.[8]  The number of chains and the method of securement used at the outset of the voyage are unknown.[9]  Ordinarily, the vessel's chief mate, Karl Carr, would have required only six lashings be applied to each trailer based on his own rule of thumb calculation whereby he divides the weight of the cargo by ten to determine the number of lashings needed.[10]  However, because heavy weather was anticipated, Carr instructed his crew to add more lashings after the vessel sailed, resulting in there being 12 chains on each trailer at the time of the loss.[11]

---

[4] Ludden Decl., Ex. C at p.52, TOTE Rules and Regulations Tariff No. 100-A ("the Tariff"), Item No. 563: "Flatbed Loading."
[5] Jensen Decl., ¶ 5, Ex. 3; Orth Decl., ¶ 5, Ex. 3.
[6] *Id*.; Declaration of Michelle Buhler ("Buhler Decl.")., Ex. K, Deposition of Patty Ludden ("Ludden Dep.") 46:6–25; Exhibit 21 to Ludden Dep., photos of cargo taken by TOTE upon receipt.
[7] Declaration of Michelle Buhler ("Buhler Decl.")., Ex. I, M/V NORTH STAR Main Deck Forward Stow Plan ("Stow Plan"); Ex. B, Deposition of Karl Carr ("Carr Dep."), 65:1–66:18.
[8] Carr Dep. 76: 4–17.
[9] Carr Dep., 82:17–83:3.
[10] *Id*., 25:11–18, 84:11–22. Six lashings would have been insufficient under Carr's rule-of-thumb method since the generators and trailers combined weighed 74,918 lbs. (Trailer 102) and 73,989 lbs. (Trailer 103).  Ludden Decl., Ex. D, TOTE TACOMA FULLIN Slips.  Moreover, TOTE's M/V NORTH STAR Cargo Securing Manual's ("Cargo Securing Manual") rule-of-thumb lashing method for non-standardized cargo, which the generators undisputedly were—*see* Carr Dep., 48:21–25, 154:4–7, 155:7–8—required that 18 lashings be applied to each trailer. *See* Buhler Decl., Ex. D, Cargo Securing Manual: Non-Standardized Cargo, TO 0162–0174) *and* Declaration of William George ("George Decl."), Ex. 2, Report and Calculations ("George Report"), pp. 8–9.  Carr, however, was not familiar with the Manual's rule-of-thumb calculation method.  Carr Dep. 25:24–26:15.
[11] Buhler Decl., Ex. B, Carr Dep., 87:21-88:10.

PLAINTIFFS' RESPONSE IN OPPOSITION TO
DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT - 3

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES LLP**
999  THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700   FAX, (206) 623-8717

Although Carr testified that he inspected all of the cargo prior to the vessel's departure[12] and then again once daily during the voyage to ensure that it was adequately secured and that the lashings had not slackened, he, apparently, did not inspect the lashings securing the subject generators to their trailers, as he claims he could not see them.[13] But, as made clear by the truckers who secured the generators, and the photos appended to their declarations, the lashings were there to be seen, if Carr had only looked.[14]

**C.    The Voyage and the Circumstances Surrounding the Loss.**

The vessel departed on December 28, 2012 at 1:02 AM and followed its usual route to Anchorage.[15] The weather was severe and worsened on December 30. According to the ship's log, for several hours, the Beaufort wind force was as high as Force 9 (47–54 mph), and the vessel was rolling heavily.[16] After the weather subsided, Carr investigated the cargo on the vessel and discovered that the subject generators had been damaged: "[A]fter we experienced heavy seas, I investigated the cargo on the vessel. I discovered that stow #1045 and #1047 held two Lynden generators that had been damaged during the voyage."[17] He observed that all of Lynden's chains securing the generators to the trailers and 20 of the 24 TOTE chains used to secure the trailers to the vessel's deck had broken loose.[18] The generator on Trailer 103 had shifted off the trailer and had fallen onto the generator on Trailer 102, which caused it to shift off its trailer into the side of the vessel.[19] When Carr first reported the loss on January 1, 2013, he attributed it to heavy weather: "30 Dec 12: MV North Star encountered heavy seas causing an oversize Generator load to break loose from its Low Boy trailer (LTIA647103)."[20]

---

[12] *Id.*, 49:1–4.
[13] *Id.*, 80:22–81:24, 14:4–25, 50:18–52:2.
[14] Jensen Decl., ¶ 3 & Exs. 1–2; Orth Decl., ¶ 3 & Exs. 1–2.
[15] Buhler Decl., Ex. B, Carr Dep., 95:6–8.
[16] *Id.*, 111:7–22.
[17] Carr Decl., ¶ 3. Contrary to his declaration, Carr confirmed in his deposition that the loss occurred on December 30, 2012. Carr Dep. 108:10–12.
[18] Buhler Decl., Ex. B, Carr Dep., 116:10-118:6; 163:24-164:8.
[19] Buhler Decl., Ex. E, post-loss photograph of cargo.
[20] *Id.*, Ex. F, Carr January 1, 2013 email re: cargo damage.

PLAINTIFFS' RESPONSE IN OPPOSITION TO
DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT - 4

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES LLP**
999  THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700   FAX, (206) 623-8717

**D.     TOTE Immediately Decided to Deny Responsibility for the Loss Even Though It Had Not Investigated Its Cause.**

Upon receiving Carr's advice, TOTE's Loss Prevention and Quality Director, Patty Ludden, whose duties include claims management, immediately decided that TOTE would deny any responsibility for the loss, even though TOTE had no information as to the cause of the loss, aside from Carr's advice in the email quoted above that it was due to heavy seas. TOTE's position was based merely on the fact that Lynden secured the generators to the trailers and that Lynden's lashings had broken.[21]

Although TOTE had already concluded that it would deny Lynden's anticipated claim, it, nevertheless, decided to have Northwest Laboratories of Seattle, Inc. ("Northwest Labs") test the metallurgical strength of one 3/8" chain fragment and one 5/16" chain fragment, which TOTE alleges were portions of the chains Lynden used on the subject trailers.[22] The 5/16" chain fragment satisfied its metallurgical strength requirement, but the 3/8" chain fragment did not. Whether that chain segment came from Trailer 103, the trailer whose cargo first broke loose, however, is unknown. More importantly, the test result is in no way probative of the condition of the other 18 chains used to secure the generators to the trailers. And it is now impossible to examine or test *any* of the chains since TOTE disposed of all of them without notice to Lynden.[23]

---

[21] Buhler Decl., Ex. B, Ludden Dep., 100:22–102:4; and Buhler Decl., Ex. J (Ludden January 2, 2013 email).
[22] The ship's reefer mechanics collected some of the broken lashings, including some of TOTE's lashings, while the cargo was being resecured after the loss and dumped them onto a pallet without segregating them by trailer number. Buhler Decl., Ex. B, Carr Dep. 146:5-147:25. The remainder of the lashings were thrown away. Buhler Decl., Ex. G, TOTE's Response to Lynden's First Interrogatories and Requests for Production ("RFPs"), pp. 12–14, Requests 17–21. After the vessel returned to Tacoma, the chains on the pallet were transferred to a plastic tote, which sat outside of TOTE's administrative office until mid-January 2014 when the chains were thrown away. *See id.*; Ludden Dep., 87:4–88:24. TOTE was well aware of Lynden's intention to seek compensation, yet it made no effort to preserve this critical evidence. *See id.*, 87:4–88:24, 92:11–93:6.
Lynden submitted its claim to TOTE on August 19, 2013 (Declaration of Steve Schultz ("Schultz Decl."), Ex. A, NC Power Claim Letter to TOTE ("TOTE Claim Letter")), filed this action on December 30, 2013 (Complaint, ECF No. 1), and served the complaint on TOTE on January 6, 2014 (Buhler Decl., Ex. H, Declaration of Service of Summons and Complaint).
[23] *See* n.22, *supra*; Schultz Decl., ¶ 6.

PLAINTIFFS' RESPONSE IN OPPOSITION TO
DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT - 5

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700   FAX, (206) 623-8717

## III.  ARGUMENT

A.  **Summary Judgment Standard.**

To prevail on summary judgment, the moving party must show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a).  *Pyramid Technologies, Inc. v. Hartford Cas. Ins. Co.*, 752 F.3d 807, 818 (9th Cir. 2014) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).  In deciding a summary judgment motion, the court must view the evidence in the light most favorable to the non-moving party and must draw all reasonable inferences in that party's favor. *City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1049–50 (9th Cir. 2014). "Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." *Campbell v. Feld Entm't, Inc.*, No. 12-CV-04233-LHK, 2014 WL 7146462, at *5 (N.D. Cal. Dec. 15, 2014) (citing *Celotex* at 322–23, 106 S.Ct. 2548). And, on issues for which the opposing party will have the burden of proof at trial, the moving party must show that "the nonmoving party has failed to make a sufficient showing on an essential element of [its] case." *Id*. (citing *Celotex* at 323, 106 S.Ct. 2548).

B.  **The Parties' Relative Burdens of Proof under the Carriage of Goods by Sea Act.**

As TOTE acknowledges, its liability is governed by the Carriage of Goods by Sea Act ("COGSA"), which is incorporated by reference in TOTE's bill of lading.[24]  COGSA is "a fault-based liability system that reflects a compromise of rights and liabilities between cargo

---

[24] The parties' Transportation Agreement provides that "all cargo and equipment transported under the Agreement shall move under and be governed by the terms, conditions and provisions of TOTEM's standard bill of lading." Ludden Decl. Ex. A, Sec. 3.1.4.  TOTE's bill of lading states in relevant part:  "If all or any part of said property is carried by water over any part of said route, such water carriage shall be performed subject to the terms and provisions and limitations of liability specified by the "Carriage of Goods by Sea Act . . . . ".  Ludden Decl., Ex. B., Sec. 8 (a).  The Act was previously codified at sections 1300–1315 of the Appendix to Title 46 of the U.S. Code. Congress recodified Title 46 in 2006, and did not include COGSA in the new codification scheme; Congress instead reprinted COGSA's text in a note to the first section of the Harter Act, 46 U.S.C. § 30701. Despite its decodification, COGSA's original enactment, 49 Stat. 1207 (1936), has never been repealed, and remains in full force and effect.

PLAINTIFFS' RESPONSE IN OPPOSITION TO
DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT - 6

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES LLP**
999  THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700   FAX, (206) 623-8717

interests and carriers," and which "imposes upon carriers certain affirmative duties designed to ensure the safe transport of cargo, the breach of which results in liability for loss or damage to cargo." *Vision Air Flight Serv., Inc. v. M/V NATIONAL PRIDE*, 155 F.3d 1165, 1172 (9th Cir. 1998). COGSA liability is "defined by explicit standards of conduct," and "designed to correct specific abuses by carriers." *Vimar Seguros y Reaseguros, S.A. v. M/V SKY REEFER*, 515 U.S. 528, 534, 115 S. Ct. 2322, 2327, 132 L. Ed. 2d 462 (1995). Among these standards are the duties to "properly and carefully load, handle, stow, carry, keep, care for, and discharge the goods carried." *Id*. (citing COGSA § 3(2)). Further, the Act prohibits carriers from altering these substantive obligations in their favor through bills of lading. *Id*. (citing COGSA § 3(8)).

Establishing liability under COGSA involves a four-part burden-shifting process, described by the Ninth Circuit as follows: (1) "Generally, under COGSA, a shipper establishes a prima facie case against the carrier by showing that the cargo was delivered in good condition to the carrier but was discharged in a damaged condition."; (2) "The burden of proof then shifts to the vessel owner to establish that the loss came under a statutory exception to COGSA."; (3) "The burden then returns to the shipper to show, at a minimum, concurrent causes of loss in the fault and negligence of the carrier, unless it is a type of negligence excluded under COGSA."; (4) "The carrier then has the burden of allocating the loss between … the loss caused by his fault and negligence and … the loss covered under the exception. ... Failure of the carrier to do so results in the carrier bearing the full loss." *Taisho Marine & Fire Ins. Co. v. M/V Sea-Land Endurance*, 815 F.2d 1270, 1274–75 (9th Cir. 1987) (citations omitted).

The Supreme Court has explained the policy behind COGSA's burden-shifting framework:

> The general rule of [c]arrier liability is based upon the sound premise that the carrier has peculiarly within its knowledge '(a)ll the facts and circumstances upon which (it) may rely to relieve (it) of (its) duty * * *. In consequence, the law casts upon (it) the burden of the loss which (it) cannot explain or,

PLAINTIFFS' RESPONSE IN OPPOSITION TO
DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT - 7

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700   FAX, (206) 623-8717

> explaining, bring within the exceptional case in which (it) is relieved from liability.' *Schnell v. The Vallescura*, 293 U.S. 296, 304, 55 S.Ct. 194, 196, 79 L.Ed. 373. We are not persuaded that the carrier lacks adequate means to inform itself of the condition of goods at the time it receives them from the shipper, and it cannot be doubted that while the carrier has possession, it is the only one in a position to acquire the knowledge of what actually damaged a shipment entrusted to its care.

*Missouri Pac. R. Co. v. Elmore & Stahl*, 377 U.S. 134, 143-44, 84 S. Ct. 1142, 1148, 12 L. Ed. 2d 194 (1964).

### C. Lynden Has Made its Prima Facie Case under COGSA.

Although liability is ultimately based on the carrier's fault, that fault is presumed when cargo is lost or damaged while in the carrier's custody. Thus, to make a prima facie case, a plaintiff need only show that the cargo was lost or damaged while in the carrier's custody. This burden is met by simply showing that the cargo was delivered to the carrier in good condition, and that the carrier discharged it in a damaged condition. *See Albany Ins. Co. v. M.V. ISTRIAN EXP.*, 61 F.3d 709, 710 (9th Cir. 1995) ("A carrier which receives undamaged goods, but which delivers damaged goods is subject to the rule applicable to all bailees and a prima facie case of liability exists.") (citing *Schnell v. THE VELLASCURA,* 293 U.S. 296, 305, 55 S.Ct. 194, 196, 79 L.Ed. 373 (1934)). Importantly, at this stage the shipper "is not required to prove that the defendant was at fault or to explain how the damage might have occurred." 1 Thomas J. Schoenbaum, Admiralty & Maritime Law § 10-23 (5th ed. 2011 & Supp. 2014) (citing *M. Golodetz Exp. Corp. v. S/S LAKE ANJA*, 751 F.2d 1103, 1109 (2d Cir. 1985)).

TOTE concedes that the subject generators were damaged while in its custody.[25] Accordingly, there is no dispute that Lynden has made its prima facie case. But even if these facts were disputed, Lynden would easily carry its burden, because the evidence plainly shows that Lynden delivered the generators to TOTE in good condition[26] and TOTE discharged them

---

[25] Carr Decl., ¶ 3; Ludden Decl., ¶ 14.
[26] Jensen Decl., ¶ 5, Ex. 3; Orth Decl., ¶ 5, Ex. 3.

PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 8

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700   FAX, (206) 623-8717

in a damaged condition.[27]  Because Lynden has met its prima facie burden, to escape liability, TOTE must prove that the damage resulted from one of COGSA's "excepted perils".

### D. TOTE Has Failed to Meet its Burden of Proving that the Damage to the Generators was Caused by Improper Securement to the Trailers.

Although TOTE fails to identify which of COGSA's excepted perils it seeks to invoke, it would appear to be "insufficiency of packing." *See* COGSA § 4(2)(n).  Because this defense "presents a factual issue"[28] and is "decided anew in each case,"[29] it is inappropriate for summary judgment.  To meet its burden, TOTE must show that Lynden failed to secure the generators sufficiently to "endure the ordinary hazards of the voyage,"—*see Columbia Mach., Inc. v. DFDS Transp. (US), Inc.*, No. CV 06-1140 ABC PLAX, 2007 WL 5173280, at *10 (C.D. Cal. Oct. 4, 2007) (quoting *Bache v. Silver Line*, 110 F.2d 60, 61 (2nd Cir.1940)) — or "withstand normal and reasonably foreseeable events"—*see id.* (quoting *Close v. Anderson*, 442 F. Supp. 14, 17 (W.D. Wash. 1977)).  Although "an extreme degree of protection would always be better, … [it] is not required of the shipper." Schoenbaum, *supra*, § 10-32 (citing *Bache v. Silver Line*, 110 F.2d 60, 1940 AMC 731 (2d Cir. 1940); *The SOUTHERN CROSS*, 1940 AMC 59 (S.D.N.Y. 1939)).  TOTE has not and cannot meet its burden.

### 1. TOTE's failure to object to Lynden's lashings is evidence of sufficient packaging.

The carrier's inspection of the cargo and failure to object at the time of delivery is evidence that the cargo was adequately packaged. *See Mobil Sales & Supply v. M.V. BANGLAR KAKOLI,* 588 F. Supp. 1134, 1141 (S.D.N.Y. 1984) (finding cargo "properly packaged for the anticipated voyage" at the time of delivery, and stating that "[t]he defendants' contention to the contrary is repelled … by the fact that the chief mate and other officers of the [carrier vessel] observed the loading of the [cargo] and found no fault with the packaging of

---

[27] *See* Buhler Decl., Ex. E.
[28] Schoenbaum, *supra*, § 10-32.
[29] *Id.*

PLAINTIFFS' RESPONSE IN OPPOSITION TO
DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT - 9

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700    FAX, (206) 623-8717

the shipment and made no complaint with respect thereto or issued any exception on the bill of lading.").

Here, TOTE inspected the generators, including their lashings, upon receipt, and did not identify any deficiencies.[30] Indeed, this hardly surprising, since TOTE has not been able to identify any provision of its own cargo securing manual that Lynden did not comply with.[31] This alone is evidence that the generators were properly prepared for shipment and sufficient to defeat summary judgment.

> **2.    TOTE has offered no evidence that Lynden's lashings were deficient or that they caused the loss.**

Aside from the Northwest Labs test result on one 3/8" chain fragment, the origin of which is unknown, TOTE offers no evidence that Lynden's lashings were in any way defective.[32]  This lone test result is in no way probative of the condition of any of the other lashings used to secure the cargo.  Aside from the 5/16" chain fragment tested by Northwest Labs (which met its strength requirement), the condition of the other lashings will never be known since TOTE has disposed of all of Lynden's lashings, as well as its own.[33]  As such,

---

[30] Jensen Decl., ¶ 5; Orth Decl., ¶ 5. TOTE has not been able to identify any provision of its own cargo securing manual that Lynden did not comply with.
[31] *See* Buhler Decl., Ex. C. Ludden Dep., 112:15–113:18.
    Q.    I'm just trying to understand if it's Tote's position that, you know, Lynden didn't comply with section whatever [of TOTE's securing manual].
    A.    No, we're not saying that.
*Id*. 113:15–18.
[32] In light of TOTE's destruction of the lashings, the key evidence in this case, Lynden will be filing a spoliation motion seeking to have the Northwest Labs Report excluded from evidence at trial and a presumption that Lynden's chains were in sound condition. "Spoliation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence, in pending or future litigation." *E.E.O.C. v. Fry's Electronics, Inc.*, 874 F.Supp.2d 1042, 1044 (W.D. Wash. 2012) (quoting *Kearney v. Foley & Lardner, LLP*, 590 F.3d 638, 649 (9th Cir.2009) (internal quotation marks omitted)). A district court has authority to sanction a party who has despoiled evidence, either under Fed. R. Civ. P. 37—if the party has "fail[ed] to obey an order to provide or permit discovery"—or as an exercise of "the inherent power of federal courts to levy sanctions in response to abusive litigation practices." *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 958 (9th Cir. 2006) (citations omitted). Appropriate sanctions can include a presumption that the despoiled evidence was unfavorable to the spoliating party, or exclusion of evidence or testimony based on the spoliated evidence. *See Unigard Sec. Ins. Co. v. Lakewood Eng'g & Mfg. Corp.*, 982 F.2d 363, 368-69 (9th Cir. 1992).
[33] TOTE's Response to Lynden's First Interrogatories and Requests for Production, *supra* n.22, pp. 12–14, Requests 17–21.

PLAINTIFFS' RESPONSE IN OPPOSITION TO
DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT - 10

LAW OFFICES
CALFO HARRIGAN LEYH & EAKES LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700   FAX, (206) 623-8717

any inference to be drawn as to the condition of Lynden's lashings must be in favor of Lynden, as the non-moving party. *See, e.g., City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1049–50 (on summary judgment, all reasonable inferences are to be drawn in favor of non-moving party). Nor has TOTE offered any evidence that Lynden's securing method did not meet industry standards or was otherwise deficient. To the contrary, as discussed below, Lynden's expert, William George, opines that Lynden properly secured the generators to their trailers.

Moreover, even if Lynden's lashings or lashing method were defective (which Lynden denies), TOTE would still have to prove that the alleged defect caused the loss. Again, it has failed to offer any such evidence. Rather, it merely relies on the chief mate's statement that, based on his post-loss inspection, he concluded that Trailer 103's chains broke first, that the impact of the Trailer 103 generator hitting the Trailer 102 generator caused Trailer 102's chains to break, and that the ship's lashings failed last.[34] This is nothing more than pure speculation.[35]

Courts have rejected the insufficient packing defense even where the carrier adduced more substantial evidence than TOTE has here. For example, in *David R. Webb Co. v. M/V HENRIQUE LEAL*, 733 F. Supp. 702, 707–08 (S.D.N.Y. 1990), the defendant offered expert testimony that the plaintiff's packaging of its cargo failed to protect it from condensation, and that this failure had caused the cargo to be damaged. The Southern District of New York rejected this conclusion as "pure speculation," stating:

---

[34] Carr Decl., ¶ 5.

[35] Insofar as the determination of liability turns on issues of Carr's and Ludden's credibility, the weighing of evidence and the determination of witnesses' credibility is the sole province of the fact-finder, and must therefore be adjudicated at trial. *See S.E.C. v. M & A W., Inc.*, 538 F.3d 1043, 1054–55 (9th Cir. 2008) ("This Court, and others, 'have long recognized that summary judgment is singularly inappropriate where credibility is at issue. Only after an evidentiary hearing or a full trial can these credibility issues be appropriately resolved.'") (quoting *SEC v. Koracorp Indus., Inc.*, 575 F.2d 692, 699 (9th Cir.1978)).

PLAINTIFFS' RESPONSE IN OPPOSITION TO
DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT - 11

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700   FAX, (206) 623-8717

> Not only does defendant not indicate what steps plaintiff could have taken to better insulate [the cargo], it fails to indicate specifically how plaintiff's packaging could be found to have been inadequate. No evidence of industry custom or past experience has been offered.

*Id.* at 707.  The *HENRIQUE* court distinguished other cases where an insufficient packing defense had been sustained, citing as an example a case in which the defendant's expert witness had testified to how a specific aspect of the plaintiff's packing had caused the damage, and what other methods were available that would have adequately protected the cargo. Contrasting that with the case before it, the *HENRIQUE* court concluded:

> In this case, the unsupported conclusion of defendant's expert that insufficient packing caused the damage to the [cargo] notwithstanding, there is no evidence to suggest that the packing was insufficient, much less that insufficient packing caused the damage.

*Id.* at 708.

TOTE's case rests on far less than what the *HENRIQUE* court summarily rejected.  It has offered no expert testimony regarding the insufficiency of Lynden's lashings and lashing methods, no evidence of what lashing methods Lynden should have used, and no evidence of "industry custom or past experience."  TOTE's metallurgical report suffers from the same defects identified in *HENRIQUE*.  It offers no opinion regarding the cause of the damage, and its sole conclusion—that a single chain fragment failed a strength test—does not even create a reasonable inference that Lynden's securing of the generators, taken as a whole, was inadequate to protect them from the ordinary and foreseeable hazards of a voyage from Tacoma to Anchorage.  *See, e.g., Mobil Sales & Supply Corp. v. M.V. BANGLLOR KAKOLI*, 588 F. Supp. 1134, 1140 (S.D.N.Y. 1984) (rejecting results of a test conducted by defendant's expert witness because the test "did not simulate the forces acting on the [plaintiff's cargo], as [it was] stowed aboard the [defendant's vessel]").

The Ninth Circuit, too, has refused to exonerate carriers from liability where the carrier relies only on inferences without direct evidence. In *Am. Home Assur. Co. v. Am. President*

PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 12

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700   FAX, (206) 623-8717

*Lines, Ltd.*, it rejected a carrier's attempt to relieve itself of liability through COGSA's "unseaworthiness" exception, writing:

> [Defendant] offered no direct proof of what unseaworthy condition caused the … damage. Instead, [it] sought to rely on a logical inference that the only possible cause of the … damage was malfunctioning of refrigeration equipment. This inference was not sufficient to establish that the damage was the result of an unseaworthy condition.
> …
> Given [defendant's] failure to present credible evidence about the actual cause, it is not entitled to exoneration under the unseaworthiness exception.

44 F.3d 774, 780 (9th Cir. 1994).

### 3. Lynden's lashing of the trailers conformed to industry standard.

In fact, Lynden's preparation of the generators for shipment did meet industry standard. Lynden's expert, William George, a marine cargo surveyor with over 40 years of experience, opines that both Lynden's lashings and method of securing the generators to its trailers met industry standards, and were sufficient to endure normal ocean transportation conditions.[36]

TOTE is not entitled to summary judgment, because it has failed to meet its burden of proving that he generators were improperly secured. It has offered no probative evidence that Lynden's lashings were defective, that they were improperly applied, or that they caused the loss. Rather, it relies on nothing more than self-serving speculation. Even if there were a scintilla of evidence supporting its position, William George's opinion to the contrary creates a genuine issue of material fact on the packaging issue.

**E.    Even if TOTE Had Met Its Burden of Bringing Itself within the Insufficient Packaging Defense, Lynden Would Be Able to Show that TOTE's Negligence Was at Least a Concurrent Cause of Loss, thereby Shifting the Burden back to TOTE to Allocate the Loss between the Two Causes, which It Could Not Do.**

Although TOTE's failure of proof makes it unnecessary to proceed with the remainder of COGSA's burden shifting analysis, it is worth noting that even if TOTE had proffered sufficient evidence to support a finding that Lynden's lashings caused the loss, it still would

---

[36] Declaration of William E. George ("George Decl."), ¶ 3, Ex. 2, Full Report and Calculations, p. 9.

PLAINTIFFS' RESPONSE IN OPPOSITION TO
DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT - 13

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700   FAX, (206) 623-8717

not be entitled to summary judgment because Lynden's expert, George, further opines that TOTE failed to use enough lashings to properly secure the trailers to the vessel, in accordance with TOTE's own Cargo Securing Manual and industry standard, and that its failure to do so was at least a concurrent cause of loss:

> [I]n my opinion TOTE did not adequately secure Trailers 102 and 103 to the vessel, according to the ship's Cargo Securing Manual's or the CSS Code's rule-of-thumb. My calculations indicate that the rule-of-thumb required at least 18 of the 1/2" chains that TOTE used to secure the trailers.
>
> …
>
> Based on these calculations, it is my opinion that the 12 chains applied by TOTE to secure the trailers to the vessel were not adequate to prevent the trailers from breaking loose when the ship encountered rough weather and began to roll. Regardless of any other factors that might have affected the ultimate damage done to the generators, my opinion is that the inadequate securement of the trailers to the ship was at least a contributing cause of this loss.[37]

Under similar facts, the Ninth Circuit found that a chief mate's failure to adequately stow cargo according to the carrier's standards constitutes negligence. In *Konica Bus. Machines, Inc. v. SEA-LAND CONSUMER*, 153 F.3d 1076 (9th Cir. 1998), the carrier stowed the shipper's cargo containers containing photocopiers in five-tier "stacking frames," which used a "twist-lock" mechanism to secure the containers inside the frames. Once the twist-lock mechanism was engaged, the carrier's manual required the insertion of "locking pins," which ensured that the twist-locks remained in the locked position. The vessel's chief mate testified that the twist-locks were engaged for the plaintiff's container when the ship left port, but that he had not inserted the locking pins, because, in his 20 years of experience, he found them to be unnecessary. However, when the vessel encountered heavy weather, the twist-locks disengaged and several containers, including plaintiff's, were washed overboard. The trial court found that the chief mate's failure to insert the locking pins per the carrier's manual was negligent, and the Ninth Circuit affirmed. *Id.* at 1078–79.

---

[37] *Id.*, ¶¶ 8–9.

PLAINTIFFS' RESPONSE IN OPPOSITION TO
DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT - 14

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700   FAX, (206) 623-8717

Thus, George's opinion that TOTE's negligence was a concurrent cause of the loss would shift the burden back to TOTE to allocate the loss between the loss caused by Lynden's insufficient packaging and its own negligence, which would be impossible, thereby resulting in TOTE's being liable for the entire loss.

**F.     TOTE's Case Authorities Have No Bearing on the Issues at Hand.**

TOTE's case authorities, *Thomas v. Pacific S.S. Lines*, 84 F.2d 506 (1936), *Katzenberg v. Lamport & Holt*, 59 F.2d 739 (E.D.N.Y. 1932), *Atlas Assurance Co. v. Harper, Robinson Shipping Co.*, 508 F.2d 1381 (9th Cir. 1975), *Sumitomo Corp. of America v. M/V SIE KIM*, 632 F.Supp. 824 (S.D.N.Y. 1985), and *Sigri Carbon Corp. v. Lykes Bros. Steamship Co.*, 655 F.Supp. 1435 (W.D. Ky. 1987) are inapposite and do nothing to support TOTE's position.  In every one of those cases, the shipper either loaded the cargo aboard the ship or instructed the carrier as to how to stow and care for its cargo.  Here, by contrast, it is undisputed that TOTE loaded the cargo and that it, alone, determined where and how to stow it aboard the NORTH STAR.[38]  And it is precisely TOTE's negligent stowage of the trailers that caused this loss.

Furthermore, none of these cases stands for the proposition that a shipper-load-stow-and-count provision immunizes a carrier from liability for its own negligence in the loading or stowage of a shipper's cargo.  And TOTE concedes as much. *See* Defs.' Br. at 15:6–9 ("The [parties' agreement] did not absolve TOTE of liability for its own actions. Rather, the parties' agreement merely relieved TOTE of liability for cargo damage caused by *Lynden's* negligence in securing the cargo, an act that neither TOTE nor its agents performed.") (emphasis in original).

---

[38] The longshoremen who loaded and stowed the trailers worked for the stevedore hired by TOTE.  Buhler Decl., Ex. C, Ludden Dep., 65:5–13; Defs.' Br. at 5 (citing Ludden Decl. ¶ 13) ("Longshore drivers, using TOTE hustlers, pulled the two trailers aboard the vessel, choose [sic] the proper stow location for the trailers, and secured each trailer to the deck.").

PLAINTIFFS' RESPONSE IN OPPOSITION TO
DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT - 15

LAW OFFICES
CALFO HARRIGAN LEYH & EAKES LLP
999  THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700   FAX, (206) 623-8717

## IV. CONCLUSION

For the foregoing reasons, the Court should DENY TOTE's Motion for Summary Judgment.

DATED this 12th day of January, 2015.

                CALFO HARRIGAN LEYH & EAKES LLP

                By   /s/ *Michelle Buhler*
                      Michelle Buhler, WSBA #16235
                      Tristan D. Bligh WSBA #42975
                      Counsel for Plaintiffs

PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 16

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700   FAX, (206) 623-8717

# CERTIFICATE OF SERVICE

I, Susan Camicia, swear under penalty of perjury and the laws of the State of Washington to the following:

1. I am over the age of 21 and not a party to this action.

2. On January 12, 2015, I caused the preceding document to be served on counsel of record in the following manner:

| | |
|---|---|
| Michael A. Barcott, WSBA #13317<br>HOLMES WEDDLE & BARCOTT, PC<br>999 Third Avenue, Suite 2600<br>Seattle, Washington 98104<br>Telephone: (206) 292-8008<br>Facsimile: (206) 340-0289<br>Email: mbarcott@hwb-law.com | ____ Mail<br> x   ECF<br>____ E-mail<br>____ Messenger |

*/s/ Susan Camicia*
Susan Camicia

PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 17

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700   FAX, (206) 623-8717