UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

INDEMNITY INSURANCE COMPANY OF NORTH AMERICA; and LYNDEN TRANSPORT, INC.,

Plaintiffs,

v.

TOTEM OCEAN TRAILER EXPRESS INC.; M.V. NORTH STAR, her engines, tackle and appurtenances, *in rem*,

Defendants.

CASE NO. C13-6093 BHS

ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

This matter comes before the Court on Defendants M/V NORTH STAR and Totem Ocean Trailer Express, Inc.'s ("TOTE") motion for summary judgment (Dkt. 14). The Court has considered the pleadings filed in support of and in opposition to the motion and the remainder of the file and hereby denies the motion for the reasons stated herein.

**I. PROCEDURAL HISTORY**

On December 30, 2014, Plaintiffs Indemnity Insurance Company of North America and Lynden Transport, Inc. ("Lynden") (collectively "Plaintiffs") filed a complaint against TOTE asserting maritime breach of contract and negligence claims. Dkt. 1.

On October 3, 2014, TOTE filed a motion for summary judgment. Dkt. 14. On January 12, 2015, Plaintiffs responded. Dkt. 18. On January 16, 2015, TOTE replied. Dkt. 24.

## II. FACTUAL BACKGROUND

On December 26, 2008, TOTE and Lynden entered into an agreement in which TOTE agreed to provide transportation of cargo shipments tendered by Lynden for movement between points in the contiguous United States and points in Alaska. Dkt. 16, Declaration of Patty Ludden ("Ludden Decl."), Ex. A. That agreement incorporates and expands upon federal statutes governing maritime liability.

On December 26, 2012, Lynden delivered to TOTE two NC Power Systems Co. Model C-27 Generators for shipment from Tacoma, Washington to Anchorage, Alaska. *Id*., ¶ 10. Prior to delivery to TOTE, Lynden loaded the two generators on two of Lynden's trailers, referred to as trailer 647102 and trailer 647103. *Id*., ¶ 11. Also prior to delivery to TOTE, Lynden employees secured the two trailers with Lynden's own chain lashing. *Id*. The two Lynden Transport Truckload Manifests state that trailer 647103 was secured with 12 chains and 14 binders and trailer 647102 was secured with 8 chains, 2 binders, 2 straps, and 2 winches. *Id*., Ex. D. The chains used included 5/16" hardened chain and standard 3/8" chain. *Id*., Ex. E.

Longshore drivers, using TOTE hustlers, pulled the two trailers aboard the TOTE's transport vessel, the M/V NORTH STAR. *Id*., ¶ 13. The drivers chose the proper stow location for the trailers, and secured each trailer to the deck with approximately 12 chains, each measuring ½" thick. Dkt. 15, Declaration of Karl Carr

1  ("Carr. Dec.") ¶ 4.  The load was approximately 65,000 lbs, and Chief Mate Carr declares

2  that, for cargo of that size and weight, typically only six chains measuring ½" thick each

3  would have been used for each trailer.  *Id.*

4        On day two of the voyage, the vessel experienced typical winter seas for the Gulf

5  of Alaska in Alaska and rolled due to heavy weather.  Ludden Decl. ¶ 14.  The Lynden

6  chains securing the cargo to trailer 647103 broke apart and the cargo came off the trailer

7  deck, striking the cargo on trailer 647102.  *Id.*  The cargo on trailer 647102 then broke

8  free from the Lynden chains securing it to the trailer, causing it to strike the framework of

9  the transport vessel.  *Id.*  Both of the generators suffered damage.  *Id.*

10       After the heavy weather subsided and it was safe to be on deck, Chief Mate Carr

11 reported the damage to the TOTE office.  *Id.*, ¶ 15.  In an email dated January 2, 2013,

12 Chief Mate Carr stated that the Lynden chains connecting the cargo to each Lynden

13 trailer were inadequate to hold the cargo in place. Carr Decl. ¶ 4.  He explained that

14       Once the first generator (L TIA64 7103 @ stow I 045) started to break its
      lashings, it slid into and impacted the adjacent generator load and caused it

15       to break its lashings (LTIA647102@ stow #1047). Eventually the
      continuous impact of shifting loads caused both Lowboy trailers to break

16       free from the ships ½" lashings.

17 *Id.*  Chief Mate Carr then added 2 sets of ½" cross chain turnbuckles athwartships at the

18 front and back of each trailer to mitigate further damage.  *Id.*

19       On December 31, 2012, the shipment arrived in Anchorage.  Ludden Dec. ¶ 17.

20 All other cargo on the M/V NORTH STAR voyage 12203 arrived in Anchorage secured

21 in stow and without damage. Carr Decl. ¶ 7. With regard to the weather, Chief Mate Carr

22

reported that the "seas we encountered were big but not that severe. This was the only cargo on board to break any lashings." *Id*.

During the investigation of the loss, Chief Mate Carr collected the broken chain surrounding the trailers. Ludden Decl. ¶ 18. TOTE submitted random samples to Northwest Laboratories in Seattle, Washington for metallurgical analysis. *Id*. There was some dispute early in the inspection process whether the 5/16" Lynden chain was adequate to secure the cargo. *Id*. Because of this, the standard 3/8" Lynden chain and the 5/6" Lynden chain were analyzed. *Id*. Northwest Laboratories determined that the 5/16" Lynden chain stood up to the strength requirements because it was hardened. *Id*. But the 3/8" Lynden chain stretched and broke under test and did not meet strength requirements. *Id*. Northwest Laboratories further reported that both chains appear to have been subjected to an undue side load. *Id*.

### III. DISCUSSION

**A.      Summary Judgment Standard**

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec.*

*Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt"). *See also* Fed. R. Civ. P. 56(e).  Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The Court must consider the substantive evidentiary burden that the nonmoving party must meet at trial – e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254; *T.W. Elec. Serv., Inc.*, 809 F.2d at 630.  The Court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party.  The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elec. Serv., Inc.*, 809 F.2d at 630 (relying on *Anderson*, 477 U.S. at 255).  Conclusory, nonspecific statements in affidavits are not sufficient, and missing facts will not be presumed. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888-89 (1990).

**B.     Carriage of Goods by Sea Act**

The Carriage of Goods by Sea Act ("COGSA") was enacted to allocate risk of loss and create predictable liability rules for ocean carriers and shippers.  COGSA "applies to a carrier engaged in the carriage of goods to or from any port in the United States."  46

U.S.C. § 30702. TOTE incorporated COGSA into its bill of lading, and it is undisputed that COGSA governs liability in this case.

Under Ninth Circuit case law, establishing liability involves a four-part burden-shifting framework. First, a shipper establishes a prima facie case against the carrier by showing that the cargo was delivered in good condition to the carrier but was discharged in a damaged condition. *Taisho Marine & Fire Ins. v. M/V Sea-Land Endurance*, 815 F.2d 1270, 1274 (9th Cir. 1987). The burden of proof then shifts to the vessel owner to establish that the loss came under a statutory exception to COGSA. *Id*. at 1274–75. "The burden then returns to the shipper to show, at a minimum, concurrent causes of loss in the fault and negligence of the carrier, unless it is a type of negligence excluded under COGSA." *Id*. at 1275. "The carrier then has the burden of allocating the loss between (1) the loss caused by his fault and negligence and (2) the loss covered under the exception." *Id*. (citation omitted)

In this case, it appears to be undisputed that Lynden has met its prima facie case against TOTE. Lynden has shown that the generators were delivered to TOTE in good condition and were damaged in transit. Thus, the burden now shifts to TOTE to establish that the damages falls under a statutory exception. At this point it is important to note that, "w*here the moving party has the burden . . . his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party*." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (citation omitted); *see also Southern Calif. Gas Co. v. City of Santa Ana*, 336 F.3d 885, 888 (9th Cir. 2003). Now

that the burden has shifted to TOTE, the moving party, TOTE must sufficiently show that no reasonable trier of fact could find other than for TOTE.

With regard to a statutory exception, TOTE asserts that it is not "liable for loss or damage arising from . . . act or omission of the shipper or owner of the goods or their agent . . . ." 46 U.S.C. § 30706(7). Under this exception, and other similar provision of the parties' agreement, TOTE argues that Lynden supplied faulty chains to secure the generators to the transport trailers. Dkt. 14 at 11. Specifically, TOTE argues that

> [Lynden] itself secured the cargo, which was shrink-wrapped by [Lynden] in a manner that precluded [TOTE] from determining if the securing was adequate to bear the load. It was not the role of [TOTE] to second-guess [Lynden's] actions.

*Id*. at 13. While TOTE has belatedly submitted[1] persuasive evidence that Lynden's chains broke before TOTE's chains, the evidence falls short of showing that no reasonable fact finder could find for Lynden on this issue. Moreover, Lynden has submitted evidence of an expert, William George, who opines that Lynden's employees "properly secured the generators to their trailers." Dkt. 22, Declaration of William George, ¶ 3. Based on the conflicting evidence, the Court concludes that TOTE has failed to show an absence of any question of material fact or meet the higher burden as the moving party with the burden of proof at trial on the issue of whether statutory

---

[1] "Where new evidence is presented in a reply to a motion for summary judgment, the district court should not consider the new evidence without giving the [non-] movant an opportunity to respond." *Provenz v. Miller*, 102 F.3d 1478, 1483 (9th Cir.1996), *cert. denied*, 522 U.S. 808 (1997) (quoting *Black v. TIC Inv. Corp.*, 900 F.2d 112, 116 (7th Cir.1990)). TOTE submitted new evidence with its reply. *See* Dkt. 25, Declaration of Stacy W. Marchesano.

exception 46 U.S.C. § 30706(7) applies.  Therefore, the Court denies TOTE's motion for summary judgment.

### IV. ORDER

Therefore, it is hereby **ORDERED** that TOTE's motion for summary judgment (Dkt. 14) is **DENIED**.

Dated this 9th day of February, 2015.

BENJAMIN H. SETTLE  
United States District Judge